# EXHIBIT A

**MUTUAL NON-DISCLOSURE AGREEMENT**

This Non-Disclosure Agreement is made as of the _____th day of July, 2019, between **Particle Media, Inc** ("Particle Media"), a Delaware limited liability company, (collectively, "You"), and Planck LLC d/b/a Patch Media, a Delaware State corporation acting on behalf of itself and its Affiliates, whose address for purposes of this Agreement is: 134 W 29th Street, 11th Floor. NY, NY 10010 (collectively, "Patch Media", "the Company", "we," "our" or "us").

In connection with your possible interest in the purchase of, or other business relationship with, Patch Media, you have requested that we furnish you with certain information relating to Patch Media or the proposed purchase or other business relationship (the "Transaction").

All information relating to the Company or its Affiliates or the Transaction furnished (whether before or after the date hereof and whether in writing, orally, visually, electronically or by any other means) by us, or our respective Representatives to you or your Representatives or your potential sources of financing for the Transaction, and all analyses, compilations, forecasts, studies or other documents prepared by you or your Representatives in connection with your or their evaluation and review of, or your interest in, the Company or the Transaction is hereinafter referred to as the "Information." The term Information will not, however, include information that (i) is or becomes generally available to the public other than as a result of a wrongful or unauthorized disclosure or a disclosure by you or your Representatives, or (ii) is or becomes available to you on a non-confidential basis from a source (other than us, or our respective Representatives) who or which is not prohibited from disclosing such information to you by any legal, contractual or fiduciary obligation. For purposes hereof, the term "Representatives" means, with respect to any specified person or entity, such person's or entity's directors, officers, partners, managers, employees, stockholders, members, affiliates, agents and representatives (including, without limitation, financial advisors, attorneys and accountants).

Accordingly, you hereby agree that:

1. You and your Representatives will not use any of the Information for any purpose other than the exclusive purpose of evaluating the possibility of a Transaction. Furthermore, you agree only to disclose the Information to your Representatives who need to know such Information for the purpose of evaluating a possible Transaction (it being understood that, prior to any disclosure, such Representatives (a) shall be informed by you of the confidential nature of the Information and directed by you to treat such information confidentially in accordance with the provisions of this Agreement, and (b) shall agree to act in accordance with the terms of this letter agreement). You will cause your Representatives to observe the terms of this letter agreement, and you will be responsible for any breach of this letter agreement by any of your Representatives. For purposes of this Agreement, an "Affiliate" shall mean an entity controlled by, controlling or under common control with Patch Media or you as applicable, but only so long as such control exists. The cessation of such control shall not release an Affiliate of its obligation to comply with the terms and conditions of this Agreement for the period of time stated herein.

2. Except as expressly permitted by paragraph 1 above, or as otherwise required by applicable law, regulation or legal process, and only after compliance with paragraph 3 below, you and your Representatives will keep the Information confidential and will not, without our prior written consent, disclose, publish, divulge, furnish or make accessible to anyone, (a) any Information in any manner whatsoever, (b) the fact that the Information exists or has been made available, (c) that you are considering the Transaction, (d) the existence of this letter agreement or the terms hereof, (e) that discussions or negotiations are taking or have taken place concerning the Transaction or involving the Company, or (f) any term, condition or other fact relating to the Transaction or such discussions or negotiations, including, without limitation, the status thereof.

3. In the event that you or any of your Representatives are requested pursuant to, or required by, applicable law, regulation or legal process (including, but not limited to, by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose any of the Information, or any other information protected under Section 2 above, you will notify us promptly so that we may seek a protective order or other appropriate remedy or, in our sole discretion, waive compliance with the terms of this letter agreement. In the event that no such protective order or other remedy is obtained, or that we waive compliance with the terms of this letter agreement, you will furnish only that portion of the Information or any other information protected under Section 2 above which you are advised by written opinion of counsel is legally required to be disclosed and will exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information or any other information.

4. If you determine not to proceed with the Transaction, you will promptly inform Patch Media of that decision and, in that case, and at any time upon our request or the request of any of our Representatives, you will promptly (a) deliver to the Company at your own expense all copies of the written Information in your or your Representatives' possession, (b) destroy all analyses, compilations, summaries, studies and other material prepared by you or your Representatives and based in whole or in part on, or otherwise containing or reflecting any of, the Information, and (c) confirm such destruction to us in writing. Any oral Information will continue to be subject to the terms of this letter agreement. You shall be responsible for assuring that your Representatives comply with the provisions of this paragraph.

5. You acknowledge that neither we nor any of our respective Representatives or controlling persons within the meaning of Section 20 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), makes any express or implied representation or warranty as to the accuracy or completeness of the Information, and you agree that no such person will have any liability relating to the Information or for any errors therein or omissions therefrom. You further agree that you are not entitled to rely on the accuracy or completeness of the Information and that you will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement with respect to the Transaction, subject to such limitations and restrictions as may be contained therein.

6.  You agree that, for a period of five (5) years from the date of this letter agreement, you will not, directly or indirectly, reveal the name of, solicit, persuade, interfere with or endeavor to entice away from us any of our employees, customers or suppliers, or employ or offer to employ any of our employees with whom you have had contact or who became known to you in connection with your consideration of the Transaction, provided that you will not be restricted in any general solicitation of employees or public advertising of employment opportunities not specifically directed at any such persons, and provided further that you will not be restricted in hiring any such person who responds to any such general solicitation or public advertising.

7.  You agree that all (a) communications regarding the Transaction, (b) requests for additional information, facility tours or management meetings, and (c) discussions or questions regarding procedures with respect to the Transaction, will be submitted or directed to [Charles Hale], or his designee.  Accordingly, you agree not to initiate or maintain contact with any of our Representatives, suppliers, distributors, brokers or customers concerning our operations, assets, prospects or finances or concerning the Transaction without the express written consent of [Charles Hale], or his designee.  You acknowledge and agree that (i) we and our Representatives are free to conduct the process leading up to a possible Transaction as we and our Representatives, in our sole discretion, determine (including, without limitation, by negotiating with any prospective buyer or other prospective party to the Transaction, and entering into a preliminary or definitive agreement without prior notice to you or any other person), (ii) we reserve the right, in our sole discretion, to change the procedures relating to our consideration of the Transaction at any time without prior notice to you or any other person, to reject any and all proposals made by you or any of your Representatives with regard to the Transaction, and to terminate discussions and negotiations with you at any time and for any reason, and (iii) unless and until a written definitive agreement concerning the Transaction has been executed and all relevant judicial approvals obtained, neither we nor any of our Representatives will have any liability to you with respect to the Transaction, whether by virtue of this letter agreement, any other written or oral expression with respect to the Transaction or otherwise.

8.  In consideration of the furnishing of Information hereunder and the commencement in good faith of discussions and negotiations with respect to the proposed Transaction, you agree that, for a period of five (5) years from the date of this letter agreement, without the prior written consent of the Board of Directors of the Company, neither you your Representatives nor any of your or their Affiliates will (i) purchase, offer or agree to purchase, or announce an intention to purchase, directly or indirectly, any securities, debt, or assets of the Company (other than a purchase of assets in the ordinary course of business); (ii) make, or in any way participate, directly or indirectly, in any "solicitation" of "proxies" to vote or "consents" (as such terms are used in the rules and regulations of the Securities and Exchange Commission) or seek to advise or influence any person with respect to the voting of or giving of consents with respect to any voting securities of the Company; (iii) initiate or support, directly or indirectly, any stockholder proposal with respect to the Company; (iv) seek or propose to influence or control the Company's management or policies; or (v) seek to negotiate or influence the terms and conditions of employment of employees of the Company or any agreement of collective bargaining with employees of the Company.

9.  You agree that no failure or delay by us in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.  You also understand and agree that your breach of this agreement will result in irreparable harm to the Company, that remedies at law will be inadequate to protect us against any actual or threatened breach of this letter agreement by you or by your Representatives, and, without prejudice to any other rights and remedies otherwise available to us, you agree to the granting of specific performance and injunctive relief in our favor without proof of actual damages. You further agree that such remedies shall not be deemed to be the exclusive remedies for any such breach of this letter agreement, but shall be in addition to all other remedies available at law or equity to us.  In addition, you agree to indemnify and hold the Company harmless from and against any and all damages, claims, fees and liabilities of any nature whatsoever, including attorneys' fees, which may result from the breach of this letter agreement by you or any of your Representatives.  In the event of litigation relating to this letter agreement, if a court of competent jurisdiction determines in a final, non-appealable order that this letter agreement has been breached by you or by your Representatives, then you will reimburse us for our costs and expenses (including, without limitation, reasonable legal fees and expenses) incurred in connection with all such litigation.

10. This letter agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of laws. Furthermore, the parties agree that the United States federal and state courts in the Borough of Manhattan, New York, shall  constitute the exclusive courts for resolution of any dispute hereunder; and that they will each submit to the personal jurisdiction of such courts with respect to any such dispute, and that any such courts are a convenient forum therefore.

11. This letter agreement contains the entire agreement between you and us concerning the confidentiality of the Information, and no modifications of this letter agreement or waiver of the terms and conditions hereof will be binding upon you or us, unless approved in writing by each of you and us. In the event any court shall determine that any provision of this letter agreement is invalid, such determination shall not affect the validity of any other provisions of this letter agreement, which shall remain in full force and effect.  You represent that you are acting on your own behalf and not as an agent for another party. This letter agreement shall be binding on, and shall enure to the benefit of the parties hereto and their respective successors and permitted assigns; provided, that, (a) any assignment of this agreement by you without the Company's prior consent will be void, and (b) the Company shall have the right to assign all of its rights, powers and privileges under this letter agreement (including, without limitation, the right to enforce this letter agreement) to any party who enters into a transaction with the Company similar to the Transaction.  You recognize and agree that nothing contained in this Agreement will be construed as granting any rights to you, by license or otherwise, to any of the Information except as specified in this Agreement. Additionally, this Agreement imposes no obligations on either party to purchase, sell, license, transfer or otherwise dispose of any technology, services or products. Nothing in this Agreement shall be deemed to grant to either party a license under the other party's copyrights, patents, trade secrets, trademarks or other intellectual property rights.

12. Nothing in this Agreement nor in any discussion undertaken nor disclosures made pursuant to this Agreement shall be deemed a commitment to disclose any information to the other party or to engage in any business relationship, contract or future dealing with the other party. In addition, nothing in this Agreement shall be deemed to limit either party's right to conduct similar discussions or perform similar activities to those undertaken in accordance with this Agreement, unless such discussions or activities are in violation of the terms hereof.

13. No waiver, modification or amendment of any provisions of this Agreement shall be valid unless made in writing, signed by both parties, and specifying with particularity the nature and extent of such a waiver, modification or amendment. Any such waiver, modification or amendment shall, in no event, be construed to be a general waiver, abandonment, modification or amendment of any of the terms, conditions or provisions of this Agreement, but such waiver shall be strictly limited and restricted to the extent and occasion specified in such signed writing.

14. You will not enter into any agreement, arrangement or any other understanding, whether written or oral, with any potential financing source or sources that may reasonably be expected to limit, restrict, restrain, otherwise impair in any manner, directly or indirectly, the ability of such financing source or sources to provide financing or other assistance to any other party in any other Transaction involving the

Company. You also represent that you have not entered into such an agreement, arrangement or understanding prior to the date hereof

15.     You agree that prior to disclosing to any prospective third party Representative regarding this Project you will first notify Patch Media in writing and receive consent to such engagement from Patch Media, such consent to not be unreasonably withheld or delayed.

16.     In the event of any premature leak, public report or other public disclosure of the existence of this Project or any confidential information regarding this Project (any such disclosure, a ("Leak"), Patch Media intends to conduct an investigation to determine the source of such Leak. You will, and will cause your Representatives to, take reasonable steps to cooperate with any such investigation, including by providing any third-party investigator retained by Patch Media and reasonably acceptable to you with full access to your respective records, including e-mail and cellular phone records, and employees provided such investigators comply with applicable securities laws and your duty of confidentiality (whether express or implied), and further provided, however, that under no circumstances will you or your Representatives be required to disclose any information to Patch Media or an investigator that would be deemed to waive the attorney-client privilege, or any other applicable privilege. The costs and expenses of any such investigation will be borne by Patch Media; provided, however, that if the investigation determines that you or any of your Representatives was the source of the Leak, the costs and expenses of the investigation will be borne by you.

Please confirm your agreement with the foregoing by signing and returning to the undersigned this letter agreement. This letter agreement may be executed in separate counterparts, each of which together shall constitute a single instrument. Facsimile signatures shall be deemed originals for all purposes hereunder.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized officers or representatives.

**PARTICLE MEDIA, INC**                                  Planck LLC d/b/a Patch Media.

By: ___*[signature]*_____          By: ___*Damian Noto (DocuSigned, 1D54C58B8186471...)*___

Name:  Vincent Wu                                        Name:  Damian Noto

Title:  Chief Operating Officer                          Title: _____

Date:  7/20/2019                                         Date:  7/22/2019

**MUTUAL NON-DISCLOSURE AGREEMENT**

This Non-Disclosure Agreement is made as of the __22__ th day of July, 2019, between **Particle Media, Inc** ("Particle Media"), a Delaware limited liability company,  (collectively, "You"), and Planck LLC d/b/a Patch Media, a Delaware State corporation acting on behalf of itself and its Affiliates, whose address for purposes of this Agreement is: 134 W 29th Street, 11th Floor. NY, NY 10010 (collectively, "Patch Media", "the Company", "we," "our" or "us").

In connection with your possible interest in the purchase of, or other business relationship with, Patch Media, you have requested that we furnish you with certain information relating to Patch Media or the proposed purchase or other business relationship (the "Transaction").

All information relating to the Company or its Affiliates or the Transaction furnished (whether before or after the date hereof and whether in writing, orally, visually, electronically or by any other means) by us, or our respective Representatives to you or your Representatives or your potential sources of financing for the Transaction, and all analyses, compilations, forecasts, studies or other documents prepared by you or your Representatives in connection with your or their evaluation and review of, or your interest in, the Company or the Transaction is hereinafter referred to as the "Information."  The term Information will not, however, include information that (i) is or becomes generally available to the public other than as a result of a wrongful or unauthorized disclosure or a disclosure by you or your Representatives, or (ii) is or becomes available to you on a non-confidential basis from a source (other than us, or our respective Representatives) who or which is not prohibited from disclosing such information to you by any legal, contractual or fiduciary obligation.  For purposes hereof, the term "Representatives" means, with respect to any specified person or entity, such person's or entity's directors, officers, partners, managers, employees, stockholders, members, affiliates, agents and representatives (including, without limitation, financial advisors, attorneys and accountants).

Accordingly, you hereby agree that:

1.      You and your Representatives will not use any of the Information for any purpose other than the exclusive purpose of evaluating the possibility of a Transaction. Furthermore, you agree only to disclose the Information to your Representatives who need to know such Information for the purpose of evaluating a possible Transaction (it being understood that, prior to any disclosure, such Representatives (a) shall be informed by you of the confidential nature of the Information and directed by you to treat such information confidentially in accordance with the provisions of this Agreement, and (b) shall agree to act in accordance with the terms of this letter agreement). You will cause your Representatives to observe the terms of this letter agreement, and you will be responsible for any breach of this letter agreement by any of your Representatives. For purposes of this Agreement, an "Affiliate" shall mean an entity controlled by, controlling or under common control with Patch Media or you as applicable, but only so long as such control exists. The cessation of such control shall not release an Affiliate of its obligation to comply with the terms and conditions of this Agreement for the period of time stated herein.

2.      Except as expressly permitted by paragraph 1 above, or as otherwise required by applicable law, regulation or legal process, and only after compliance with paragraph 3 below, you and your Representatives will keep the Information confidential and will not, without our prior written consent, disclose, publish, divulge, furnish or make accessible to anyone, (a) any Information in any manner whatsoever, (b) the fact that the Information exists or has been made available, (c) that you are considering the Transaction, (d) the existence of this letter agreement or the terms hereof, (e) that discussions or negotiations are taking or have taken place concerning the Transaction or involving the Company, or (f) any term, condition or other fact relating to the Transaction or such discussions or negotiations, including, without limitation, the status thereof.

3.      In the event that you or any of your Representatives are requested pursuant to, or required by, applicable law, regulation or legal process (including, but not limited to, by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose any of the Information, or any other information protected under Section 2 above, you will notify us promptly so that we may seek a protective order or other appropriate remedy or, in our sole discretion, waive compliance with the terms of this letter agreement. In the event that no such protective order or other remedy is obtained, or that we waive compliance with the terms of this letter agreement, you will furnish only that portion of the Information or any other information protected under Section 2 above which you are advised by written opinion of counsel is legally required to be disclosed and will exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information or any other information.

4.      If you determine not to proceed with the Transaction, you will promptly inform Patch Media of that decision and, in that case, and at any time upon our request or the request of any of our Representatives, you will promptly (a) deliver to the Company at your own expense all copies of the written Information in your or your Representatives' possession, (b) destroy all analyses, compilations, summaries, studies and other material prepared by you or your Representatives and based in whole or in part on, or otherwise containing or reflecting any of, the Information, and (c) confirm such destruction to us in writing. Any oral Information will continue to be subject to the terms of this letter agreement. You shall be responsible for assuring that your Representatives comply with the provisions of this paragraph.

5.      You acknowledge that neither we nor any of our respective Representatives or controlling persons within the meaning of Section 20 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), makes any express or implied representation or warranty as to the accuracy or completeness of the Information, and you agree that no such person will have any liability relating to the Information or for any errors therein or omissions therefrom. You further agree that you are not entitled to rely on the accuracy or completeness of the Information and that you will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement with respect to the Transaction, subject to such limitations and restrictions as may be contained therein.

6.      You agree that, for a period of five (5) years from the date of this letter agreement, you will not, directly or indirectly, reveal the name of, solicit, persuade, interfere with or endeavor to entice away from us any of our employees, customers or suppliers, or employ or offer to employ any of our employees with whom you have had contact or who became known to you in connection with your consideration of the Transaction, provided that you will not be restricted in any general solicitation of employees or public advertising of employment opportunities not specifically directed at any such persons, and provided further that you will not be restricted in hiring any such person who responds to any such general solicitation or public advertising.

7.      You agree that all (a) communications regarding the Transaction, (b) requests for additional information, facility tours or management meetings, and (c) discussions or questions regarding procedures with respect to the Transaction, will be submitted or directed to [Charles Hale], or his designee. Accordingly, you agree not to initiate or maintain contact with any of our Representatives, suppliers, distributors, brokers or customers concerning our operations, assets, prospects or finances or concerning the Transaction without the express written consent of [Charles Hale], or his designee. You acknowledge and agree that (i) we and our Representatives are free to conduct the process leading up to a possible Transaction as we and our Representatives, in our sole discretion, determine (including, without limitation, by negotiating with any prospective buyer or other prospective party to the Transaction, and entering into a preliminary or definitive agreement without prior notice to you or any other person), (ii) we reserve the right, in our sole discretion, to change the procedures relating to our consideration of the Transaction at any time without prior notice to you or any other person, to reject any and all proposals made by you or any of your Representatives with regard to the Transaction, and to terminate discussions and negotiations with you at any time and for any reason, and (iii) unless and until a written definitive agreement concerning the Transaction has been executed and all relevant judicial approvals obtained, neither we nor any of our Representatives will have any liability to you with respect to the Transaction, whether by virtue of this letter agreement, any other written or oral expression with respect to the Transaction or otherwise.

8.      In consideration of the furnishing of Information hereunder and the commencement in good faith of discussions and negotiations with respect to the proposed Transaction, you agree that, for

a period of five (5) years from the date of this letter agreement, without the prior written consent of the Board of Directors of the Company, neither you your Representatives nor any of your or their Affiliates will (i) purchase, offer or agree to purchase, or announce an intention to purchase, directly or indirectly, any securities, debt, or assets of the Company (other than a purchase of assets in the ordinary course of business); (ii) make, or in any way participate, directly or indirectly, in any "solicitation" of "proxies" to vote or "consents" (as such terms are used in the rules and regulations of the Securities and Exchange Commission) or seek to advise or influence any person with respect to the voting of or giving of consents with respect to any voting securities of the Company; (iii) initiate or support, directly or indirectly, any stockholder proposal with respect to the Company; (iv) seek or propose to influence or control the Company's management or policies; or (v) seek to negotiate or influence the terms and conditions of employment of employees of the Company or any agreement of collective bargaining with employees of the Company.

9.      You agree that no failure or delay by us in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. You also understand and agree that your breach of this agreement will result in irreparable harm to the Company, that remedies at law will be inadequate to protect us against any actual or threatened breach of this letter agreement by you or by your Representatives, and, without prejudice to any other rights and remedies otherwise available to us, you agree to the granting of specific performance and injunctive relief in our favor without proof of actual damages. You further agree that such remedies shall not be deemed to be the exclusive remedies for any such breach of this letter agreement, but shall be in addition to all other remedies available at law or equity to us. In addition, you agree to indemnify and hold the Company harmless from and against any and all damages, claims, fees and liabilities of any nature whatsoever, including attorneys' fees, which may result from the breach of this letter agreement by you or any of your Representatives. In the event of litigation relating to this letter agreement, if a court of competent jurisdiction determines in a final, non-appealable order that this letter agreement has been breached by you or by your Representatives, then you will reimburse us for our costs and expenses (including, without limitation, reasonable legal fees and expenses) incurred in connection with all such litigation.

10.     This letter agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of laws. Furthermore, the parties agree that the United States federal and state courts in the Borough of Manhattan, New York, shall constitute the exclusive courts for resolution of any dispute hereunder; and that they will each submit to the personal jurisdiction of such courts with respect to any such dispute, and that any such courts are a convenient forum therefore.

11.     This letter agreement contains the entire agreement between you and us concerning the confidentiality of the Information, and no modifications of this letter agreement or waiver of the terms and conditions hereof will be binding upon you or us, unless approved in writing by each of you and us. In the event any court shall determine that any provision of this letter agreement is invalid, such determination shall not affect the validity of any other provisions of this letter agreement, which shall remain in full force and effect. You represent that you are acting on your own behalf and not as an agent for another party. This letter agreement shall be binding on, and shall enure to the benefit of the parties hereto and their respective successors and permitted assigns; provided, that, (a) any assignment of this agreement by you without the Company's prior consent will be void, and (b) the Company shall have the right to assign all of its rights, powers and privileges under this letter agreement (including, without limitation, the right to enforce this letter agreement) to any party who enters into a transaction with the Company similar to the Transaction. You recognize and agree that nothing contained in this Agreement will be construed as granting any rights to you, by license or otherwise, to any of the Information except as specified in this Agreement. Additionally, this Agreement imposes no obligations on either party to purchase, sell, license, transfer or otherwise dispose of any technology, services or products. Nothing in this Agreement shall be deemed to grant to either party a license under the other party's copyrights, patents, trade secrets, trademarks or other intellectual property rights.

12.     Nothing in this Agreement nor in any discussion undertaken nor disclosures made pursuant to this Agreement shall be deemed a commitment to disclose any information to the other party or to engage in any business relationship, contract or future dealing with the other party. In addition, nothing in this Agreement shall be deemed to limit either party's right to conduct similar discussions or perform similar activities to those undertaken in accordance with this Agreement, unless such discussions or activities are in violation of the terms hereof.

13.     No waiver, modification or amendment of any provisions of this Agreement shall be valid unless made in writing, signed by both parties, and specifying with particularity the nature and extent of such a waiver, modification or amendment. Any such waiver, modification or amendment shall, in no event, be construed to be a general waiver, abandonment, modification or amendment of any of the terms, conditions or provisions of this Agreement, but such waiver shall be strictly limited and restricted to the extent and occasion specified in such signed writing.

14.     You will not enter into any agreement, arrangement or any other understanding, whether written or oral, with any potential financing source or sources that may reasonably be expected to limit, restrict, restrain, otherwise impair in any manner, directly or indirectly, the ability of such financing source or sources to provide financing or other assistance to any other party in any other Transaction involving the Company. You also represent that you have not entered into such an agreement, arrangement or understanding prior to the date hereof

15.     You agree that prior to disclosing to any prospective third party Representative regarding this Project you will first notify Patch Media in writing and receive consent to such engagement from Patch Media, such consent to not be unreasonably withheld or delayed.

16.     In the event of any premature leak, public report or other public disclosure of the existence of this Project or any confidential information regarding this Project (any such disclosure, a ("Leak"), Patch Media intends to conduct an investigation to determine the source of such Leak. You will, and will cause your Representatives to, take reasonable steps to cooperate with any such investigation, including by providing any third-party investigator retained by Patch Media and reasonably acceptable to you with full access to your respective records, including e-mail and cellular phone records, and employees

DocuSign Envelope ID: F39D795B-5370-4EE8-8936-95ECB15F5F7D

provided such investigators comply with applicable securities laws and your duty of confidentiality (whether express or implied), and further provided, however, that under no circumstances will you or your Representatives be required to disclose any information to Patch Media or an investigator that would be deemed to waive the attorney-client privilege, or any other applicable privilege. The costs and expenses of any such investigation will be borne by Patch Media; provided, however, that if the investigation determines that you or any of your Representatives was the source of the Leak, the costs and expenses of the investigation will be borne by you.

Please confirm your agreement with the foregoing by signing and returning to the undersigned this letter agreement. This letter agreement may be executed in separate counterparts, each of which together shall constitute a single instrument. Facsimile signatures shall be deemed originals for all purposes hereunder.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized officers or representatives.

| **PARTICLE MEDIA, INC** | Planck LLC d/b/a Patch Media. |
|---|---|
| By: *[signature]* | By: *Damian Noto* (DocuSigned by, 1D54C58B818647ature]* |
| Name: Ethan Fedida | Name: Damian Noto |
| Title: Business Development | Title: |
| Date: 7/22/2019 | Date: 7/22/2019 |