JUDD BURSTEIN, P.C.
ATTORNEYS AT LAW

JUDD BURSTEIN*
JBURSTEIN@BURLAW.COM

PETER B. SCHALK**
PSCHALK@BURLAW.COM
———
G. WILLIAM BARTHOLOMEW**
WBARTHOLOMEW@BURLAW.COM

*ALSO ADMITTED IN CONNECTICUT
**ALSO ADMITTED IN NEW JERSEY

260 MADISON AVENUE
15TH FLOOR
NEW YORK, NEW YORK 10016
TEL: (212) 974-2400
FAX: (212) 974-2944
WWW.BURLAW.COM

12 OLD HILL FARMS ROAD
WESTPORT, CONNECTICUT 06880
TEL: (203) 226-4823

**VIA ECF**  March 5, 2021
Honorable Lorna G. Schofield
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *Planck LLC v. Particle Media, Inc.*, Case No. 20-CV-10959 (LGS)

Dear Judge Schofield:

  We represent Plaintiff Planck LLC, d/b/a, Patch Media ("Patch" or "Plaintiff"), and I write in response to the pre-motion letter of Defendant Particle Media, Inc., d/b/a, News Break ("News Break" or "Defendant"), seeking to file a motion to dismiss or transfer venue. Regardless of Defendant's contemplated motion, Plaintiff intends to file a first amended complaint as of right under Fed.R.Civ.P. 15(a), to add claims under the RICO statute and for fraudulent inducement, with additional factual allegations in support. The amended pleading will moot some if not all of Defendant's anticipated motion. It would squander client and judicial resources for Defendant to move to dismiss or transfer when the operative complaint will be superseded by an amended pleading. Accordingly, Plaintiff proposes that it file its amended complaint and that Defendant then assess how to respond. We ask until April 8, 2021, to amend due to the press of other work. While this is more time than we would normally seek, we are a small firm with three attorneys, and Judd Burstein, the firm partner who will be drafting the amended complaint, is preparing for a custody hearing in another case.

  Patch is a media news company which has pioneered digital hyper-local news content throughout the country via the patch.com website. While it commenced operations as an aggregator, News Break's business changed into one that appears almost identical to that of Patch by offering local news and weather pages throughout the country. The difference is that News Break obtains its content by misappropriating it from legitimate news organizations and then publicizing sufficient content on News Break sites so as to pirate the advertising revenue that the creators of the content should enjoy as a result of their investments of time, expense, and expertise. In short, News Break's entire business model is premised upon the thievery of others' content.[1]

---

  [1] Patch is not alone in this assessment. In a separate, recently filed lawsuit, the plaintiff
(continued...)

In support of its anticipated motion, News Break claims that it enjoys an unlimited license to use any and all content created by Patch, which it was apparently granted free of charge, and that any disputes over the issue must be litigated in California. In reality, the facts will show that News Break duped Patch's CEO into assigning a technical assistant to work with News Break on feigned technical difficulties associated with separating out Patch's coronavirus newsfeed – for which Patch did grant News Break a limited license as a public service during a once-in-a-century pandemic – from its general content, for which News Break knew full well that it had no license. News Break then induced the technical specialist assigned by Patch, who had technical proficiency but no executive authority, to "click through" on a broad online license agreement as a supposed formality in helping News Break with its claimed technical difficulties. This bare bones "click through" license which contains a California forum selection clause flies in the face of the parties' prior negotiations about News Break licensing Patch content or purchasing Patch *in toto*, during which the parties insisted upon heavily negotiated agreements with the input of counsel. The parties' contemporaneous written and oral communications are also inconsistent with the terms of the "click through" agreement.

From a legal standpoint, because Patch's copyright claims do not arise out of the "click through" agreement, its forum selection provision does not even apply here. *See Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 391 (2d Cir 2007) ("Because the recording contract is only relevant as a defense in this suit, we cannot say that Phillips' copyright claims originate from, and therefore 'arise out of,' the contract.") (Holding that copyright infringement claims were not governed by contract's forum selection clause). Even if this were not so, News Break's pre-motion letter elides over how there are actually two conflicting forum selection clauses at play here: the one contained in the "click through" and the other in an NDA the parties signed when News Break approached

---

[1](...continued)
Emmerich Newspapers alleged as follows about News Break's business practices:

> This parasitic business model makes no pretense of transforming the stolen news stories in any manner which might constitute fair use. Particle Media simply copies and republishes the entire story verbatim. It makes money by substituting its own ads for the original ones, directly competing with Emmerich Newspapers for ad revenue. And it does all of this in blatant disregard for the copyrights held by Emmerich Newspapers, which bears the substantial cost and does the hard work generating the stories. Like any parasite, Particle Media cares nothing for the long term health of the host on which it feeds, and by stealing stories and ad revenues it is contributing to the death of the local newspaper industry.

*See Emmerich Newspapers Inc. v. Particle Media, Inc. D/b/a/ News Break*, No. 3:21-CV-32 KHJ-MTP (U.S.D.C., S. Dist. Miss. 2021) (Dkt. No. 1 at ¶ 2). The language may be colorful, but the point is the same: News Break makes a living off of stealing others' content, and it engaged in a determined and pernicious effort to do so from Patch.

Patch about supposedly wanting to buy it. Unlike the "click through," the NDA was signed by Vincent Woo, News Break's Chief Operating Officer, and Damian Noto, VP of Business Development for Patch, so there is no question that it was authorized. The NDA contains a mandatory New York forum selection clause and confirmed that News Break had no license to any Patch content. The NDA also states that any "waiver, modification or amendment ... [must be] in writing, signed by both parties, and specifying with particularity the nature and extent of such a waiver, modification or amendment." Yet, the "click through" nowhere mentions the NDA let alone purports to override its forum selection clause or express confirmation that News Break has no license to Patch content.

The main Second Circuit decision on conflicting forum selection clauses is *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822-23 (2d Cir. 2006), which held that if "the parties do not dispute the facts which gave rise to those two conflicting contracts, the court must decide as a matter of law on the agreed facts which forum selection clause governs." However, where there are disputed facts about conflicting forum selection clauses, as is the case here, an evidentiary hearing is indicated. *See Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 528 Fed. Appx. 33, 35-36, 2013 U.S. App. LEXIS 12639, *3-5 (2d Cir. N.Y. June 20, 2013). *See also Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 301 (E.D.N.Y. 2013) ("because of the disputed facts that exist with regard to the forum selection clause issue, the Court also cannot engage in a *forum non conveniens* analysis prior to conducting an evidentiary hearing."). The need for an evidentiary hearing to settle a dispute over forum is underscored by the fact that the "click through" is governed by California law, which is more relaxed than New York law regarding the admission of parol evidence to resolve ambiguities in a contract. *Grove Way Invs., LLC v. Centene Mgmt. Co.*, LLC, 2020 U.S. Dist. LEXIS 243114, at *9-10 (E.D. Cal. Dec. 28, 2020). Further, the weight of authority is against severing claims covered by conflicting forum selection clauses, and supports enforcing only one clause in favor of judicial economy. *Lewis v. Jayco, Inc.*, 2019 U.S. Dist. LEXIS 135448, *7-8 (W.D. Va. Aug. 12, 2019); *Primary Color Sys. Corp. v. Agfa Corp.*, 2017 U.S. Dist. LEXIS 221512, *17-18 (C.D. Cal. July 13, 2017); *Enhancedcare, Inc. v. Attentive Health & Wellness, LLC*, 2021 U.S. Dist. LEXIS 21631, *18-19 (W.D.N.Y. Feb. 4, 2021). Therefore, if the "click through" California forum selection clause even applies to Patch's copyright claims, *see Philips*, an all or nothing evidentiary hearing to decide which forum selection clause controls is the likeliest outcome. Plaintiff should amend the complaint before the parties and the Court go down that road.

The amended complaint will contain a claim, specifically one for fraudulent inducement, with attendant factual allegations that directly relate to the question of whether the "click through" agreement is enforceable. Furthermore, the contemplated RICO claim will likely fall outside the scope of both the "click through" license and its forum selection clause, certainly if the copyright claim does. *See Phillips, supra*. The amended complaint will also include additional factual allegations to address News Break's criticisms of Patch's claim for breach of the NDA. It should be filed before Defendant moves to dismiss a soon-to-be-moot pleading.

                                                          Respectfully submitted,
                                                          Judd Burstein
                                                          Peter B. Schalk

cc:     Defendant's counsel (via ECF)