UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                    :
PLANCK LLC,                                         :
                              Plaintiff,            :
                                                    :          20 Civ. 10959 (LGS)
            -against-                               :
                                                    :          OPINION AND ORDER
PARTICLE MEDIA, INC. et al.,                        :
                              Defendants.           :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Defendants Particle Media, Inc. d/b/a News Break ("News Break"), Jeff Zheng and

Vincent Wu move to transfer venue or, alternatively, to dismiss the First Amended Complaint

("FAC") of Plaintiff Planck LLC d/b/a Patch Media ("Patch").  For the reasons set forth below,

Defendants' motions to dismiss are denied, except that Defendant Zheng is dismissed.

**I.        BACKGROUND**

        The following facts are taken from the FAC and are assumed to be true only for purposes

of this motion.  *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d

509, 512 (2d Cir. 2020).

        Plaintiff operates Patch.com, a website divided into approximately 1,200 pages known as

"patches," each of which provides local news, event listings, classified ads, weather and other

information for localities across the United States.  Plaintiff generates revenue through web

advertising.  Plaintiff drives web traffic to its sites through social media, email subscriptions and

by contracting with news aggregators, such as Yahoo and Google News, which place links to

Plaintiff's site on their news pages.  Plaintiff also uses technical processes to ensure that its

content is ranked highly in search engine results.

Defendants operate a competing service called News Break, which the FAC alleges "alters, copies, and delivers to its customers substantial infringing excerpts from Patch stories, including copyrighted photographs."  Defendants Wu and Zheng are News Break's Chief Operating Officer and Chief Executive Officer, respectively.

In 2019, Defendants approached Plaintiff regarding an acquisition or content sharing deal.  The parties entered into a non-disclosure agreement (the "NDA").  The NDA provides that any information shared during the course of negotiations could be used by the counterparty only for "the exclusive purpose of evaluating the possibility" of a business deal.  The NDA also provides that the parties were not licensing each other's intellectual property and that the NDA could not be modified except in a writing "specifying with particularity the nature and extent" of any modification.  The NDA contains a New York choice of law and forum selection clause.  Pursuant to the NDA, Plaintiff provided Defendants with information regarding Plaintiff's (1) processes for sourcing, organizing and distributing local news content and optimizing that content for visibility in search engine results; (2) features by which users could generate content and (3) specific features that drive user engagement.

Discussion of an acquisition was not fruitful, but the parties continued to discuss a possible deal whereby Defendants would license some of Plaintiff's content.  In late 2019, the parties exchanged drafts of a potential licensing contract but did not reach any agreement.  In early 2020, the parties resumed negotiations, and Plaintiff's president, Warren St. John, "orally agreed on behalf of Patch that, as a public service, News Break could use certain of Patch's Covid-19 content."  An email from St. John to Wu contained a link to specific types of COVID-19 content nationwide -- article headlines, summaries, image thumbnails, geographical information and links to the Patch.com website.  Wu responded that information in this linked

feed could not be "ingested by our tech system" and requested that Plaintiff replace it.  Wu added a News Break technical employee to the email, who explained that the feed was provided in a format incompatible with News Break's systems.  During a subsequent call, Wu suggested that Plaintiff provide a general feed of all headlines, which Defendants could filter for COVID-19 content, rather than the nationwide COVID-specific data linked in the email.  St. John sent Wu a link to one such feed, asking "[C]an your team check this feed structure to see if it might work?"

St. John then delegated resolution of further technical issues to Plaintiff's IT employee Marc Torrence, stating that he was "[a]dding Marc Torrence from Patch Product [to the email chain], to help us get you a feed that works for you."  As part of that process, Defendants asked Torrence to create a "publisher profile" with the News Break service and link all 1,200 of Plaintiff's local feeds, or patches, to that master profile, so that they could be ingested at News Break for purposes of sharing COVID content.

To create that profile, Torrence had to click through an online Terms of Service Agreement ("TOS Agreement").  Pursuant to that agreement, the profile applicant (1) granted Defendants a non-exclusive license to publish the applicant's content on Defendants' site and (2) permitted Defendants to display advertisements in connection with that content, use that content to promote their own services and publish that content to third-party platforms.  The TOS Agreement contains a California choice of law and forum selection clause:  "The laws of the State of California shall govern these Terms.  You agree that any suit arising from the Services must take place in a court located in Santa Clara, California."  After Defendants were able to ingest Plaintiff's general feeds for COVID-19 purposes, the parties continued discussions of a broader licensing deal but did not reach any agreement.

Defendants have published links to Plaintiff's stories that did not involve COVID-19. When users clicked on such links, they were taken to intermediate pages displaying the lead of Plaintiff's story -- which Plaintiff does not make publicly available -- along with a link to Plaintiff's website.  Use of such intermediate pages:  (1) creates confusing results in search engines by misattributing Plaintiff's content to Defendants; (2) permits Defendants to generate advertising revenue from pages containing Plaintiff's non-public leads; (3) reduces traffic to Plaintiff's website from users who learned enough from the non-public lead; (4) artificially inflates Defendants' ranking in search engines, as Defendants' pages containing Plaintiff's content receive more user visits and (5) permits Defendants to provide Plaintiff's content to third parties.

The FAC alleges that Defendants obtained this content by (1) reading and extracting content from Plaintiff's website with automated computer bots ("scraping"), an effort that was aided by Defendants' use of data that Plaintiff disclosed pursuant to the NDA and (2) using the feeds provided by Torrence when troubleshooting the COVID data sharing issue.

The FAC asserts federal causes of action for direct copyright infringement (Count One), violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c) (Count Two), conspiracy to engage in racketeering activity, 18 U.S.C. § 1962(d) (Count Three) and violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b) (Count Four).  The FAC also asserts state law claims for breach of contract with respect to the NDA (Count Five) and fraudulent inducement to enter into the TOS Agreement (Count Six).

Defendants argue that (1) the copyright, RICO, DMCA and fraudulent inducement claims arise under the TOS Agreement, and should be transferred to the Northern District of California

per that agreement's forum selection clause; (2) all of Plaintiff's claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and (3) the claims against Defendant Zheng should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II.     LEGAL STANDARDS

### A. Pleading Requirements

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).  To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555.  In ruling on a motion to dismiss, the court may consider:  (1) the complaint; (2) documents attached to the complaint, quoted therein or incorporated by reference and (3) documents upon which the plaintiff relies and which are integral to the complaint.

*Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011); *accord Bergesen v. Manhattanville College*, No. 20 Civ. 3689, 2021 WL 3115170, at *2 (S.D.N.Y. July 20, 2021).

**B.  Forum Selection Clauses and Venue**

Enforcement of a forum selection clause is governed by a four-part test:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (alterations, quotation marks and citations omitted); *accord Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 463 F. Supp. 3d 409, 435 (S.D.N.Y. 2020).  Where, as here, an agreement contains a choice of law clause and a forum selection clause, interpretation of the forum selection clause is governed by the parties' chosen body of law, while enforceability of the forum selection clause is governed by federal common law.  *Martinez*, 740 F.3d at 217-18; *accord NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 342 (S.D.N.Y. 2020).  Steps one and four of the *Martinez* analysis involve enforceability of a forum selection clause, whereas steps two and three of that analysis involve questions of interpretation. *Martinez*, 740 F.3d at 217-18.

Under step four of the *Martinez* test, in determining whether enforcement of a forum selection clause would be unreasonable or unjust, courts consider whether "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the

plaintiff effectively will be deprived of his day in court." *Martinez*, 740 F.3d at 228 (internal

quotation marks omitted); *accord M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18

(1972).

In deciding a motion to transfer based on a forum selection clause, a district court

typically relies on pleadings and affidavits, but may not resolve any disputed material fact in the

movant's favor unless an evidentiary hearing is held. *See Martinez*, 740 F.3d at 216-17;

*Fagbeyiro v. Schmitt-Sussman Enters., Inc.*, No. 17 Civ. 7056, 2018 WL 4681611, at *2

(S.D.N.Y. Sept. 28, 2018).  Because the parties' submissions do not raise any factual disputes

that could be resolved in Defendants' favor, no evidentiary hearing is needed.

## III.   DISCUSSION

### A.  TOS Agreement Forum Selection Clause

The forum selection clause in the TOS Agreement requires all claims "arising from the

Services take place in a court located in Santa Clara, California."  The TOS Agreement's forum

selection clause does not govern any of the claims in this action for two independent reasons.

First, Torrence did not have authority, actual or apparent, to bind Patch, and the forum selection

clause was not reasonably communicated to Patch.  Second, enforcement of the forum selection

clause would be unreasonable and unjust, and the clause is "invalid for such reasons as fraud or

overreaching."  *Martinez*, 740 F.3d at 217.

#### 1.  Torrence's Apparent Authority

First, no reasonable party could have believed that Torrence had the authority to bind

Plaintiff to the TOS Agreement, including its forum selection clause.  Under federal common

law, an agreement is binding on a principal only if the purported agent who signed the agreement

had actual or apparent authority to enter into it. *See Villar v. City of N.Y.*, Civ. No. 9 Civ. 7400,

2021 WL 2702619, at *3 (citing *Hillair Cap. Invs., LP v. Smith Sys. Transp., Inc.*, 640 F. App'x 49, 51 (2d Cir. 2016)).  Defendants do not identify any "written or spoken words or any other conduct of [Plaintiff] which, *reasonably interpreted*, causes a third person to believe that [Plaintiff] consent[ed] to have an act done on his behalf by the person purporting to act for him." *FAT Brands Inc. v. PPMT Cap. Advisors, Ltd.*, No. 19 Civ. 10497, 2021 WL 37709, at *6 (S.D.N.Y. Jan. 5, 2021) (applying New York law) (emphasis added); *accord Hillair*, 640 F. App'x at 52 ("Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction.") (applying federal common law).

Plaintiff, at length and with reference to specific email correspondence and other evidence, details the circumstances under which Torrence signed the TOS Agreement:  (1) after the parties had failed to reach agreement on a general content-sharing deal, Plaintiff agreed to share news stories related to COVID-19 with Defendants "as a public service"; (2) on an email titled "Patch *Covid* feed" (emphasis added), St. John sent Wu a sample newsfeed limited primarily to COVID-19 related content; (3) St. John and Wu noted difficulties with integrating that COVID-specific feed with Defendants' system; (4) Wu advised that it would be easier if Plaintiff provided a general feed of all headlines; (5) both executives added technical subordinates to the email chain, with St. John noting he was adding Torrence to ensure that Defendants could get a feed in the format their system required and (6) Torrence subsequently signed the TOS Agreement as a part of that effort and sent links to a number of feeds, to be filtered consistent with the parties' agreement to share limited COVID-19 content.  Torrence's superior has also provided a declaration asserting that Torrence did not have the authority to terminate or enter into contracts on behalf of Plaintiff.  Torrence's click-through of the TOS

Agreement was performed as a technical troubleshooting measure, and no reasonable party interpreting that action would have understood him to be binding Plaintiff to a full content-sharing deal and the associated forum selection clause.

In response, Defendants first cite non-binding authority holding that managers who click through website terms of service in an effort to sign up for a counterparty's general services have apparent authority to bind their companies.  Torrence, by contrast, clicked through the TOS Agreement as part of a troubleshooting effort to deliver COVID-specific content to Defendants.

Defendants next claim that Torrence had authority to bind Plaintiff to the TOS Agreement, including the forum selection clause, because St. John remained on the email chain between Torrence and his counterpart at Defendants but did not object to Torrence's sharing of general news feeds.  This argument is unpersuasive, as Wu, after agreeing that the parties should share information related to the COVID pandemic for the public good, requested Plaintiff share its general news feeds, from which Defendants could extract the agreed-upon COVID content. Wu's affidavit represents that he was requesting these feeds because Defendants' system could not ingest the feed of aggregated nationwide COVID-19 content that Plaintiff initially provided. That St. John saw Torrence sharing those feeds via email was entirely consistent with the parties' discussion and does not suggest that St. John or Plaintiff acquiesced to the TOS Agreement's forum selection clause.  Because the forum selection clause was communicated only to Torrence, who lacked authority to bind Plaintiff, it was not "reasonably communicated" to Plaintiff -- the first prong of the *Martinez* test -- and is also unenforceable for that reason.  *Martinez*, 740 F.3d at 217.

## 2. Unreasonable, Unjust and Overreaching

Even if the forum selection clause were presumptively enforceable, under the fourth prong of the *Martinez* test, Plaintiff has made a "sufficiently strong showing" that enforcement of the TOS Agreement, including its forum selection clause, would be "unreasonable or unjust" or "that the clause was invalid for such reasons as fraud or overreaching." *Martinez*, 740 F.3d at 217. The evidence of the context in which Torrence signed the TOS Agreement and shared Plaintiff's feeds constitutes a "strong showing" that enforcing the clause would be unreasonable or unjust, and that the clause is invalid as the result of overreaching. High-level decisionmakers for the parties contemplated sharing certain information regarding COVID-19 at the start of an unprecedented global pandemic. In order to facilitate that sharing, Plaintiff's executive introduced a technical employee, who worked with his counterpart to ensure that information was shared. The record contains no persuasive evidence that executives with the authority to bind the parties had any intention of entering into a long-term deal whereby huge swathes of Plaintiff's content would be licensed to Defendants through the mechanism of troubleshooting a specific technical issue arising from an effort to share only COVID-19 information. For the same reason, the evidence does not show that Plaintiff intended for Torrence to limit the situs of any litigation arising out of such content sharing. Permitting Defendants to rely on that clause to deprive Plaintiff of its chosen forum would be unreasonable, unjust and overreaching. *See DiRienzo v. Philip Servs.*, 294 F.3d 21, 28 (2d Cir. 2002) ("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

In response, Defendants suggest that the email chain between St. John and Wu shows that the parties were contemplating a broad deal not limited to COVID content, with all disputes to be resolved in California. This suggestion is flatly contradicted by (1) the email chain and affidavits

from Wu and St. John, which make clear that the parties were discussing the sharing of COVID information and (2) the fact that, at the time of this discussion, the parties had unsuccessfully attempted to reach an acquisition or content licensing deal for all of Plaintiff's content.

For these reasons, the forum selection clause in the TOS agreement is unenforceable.

## B.  Adequacy of the Pleadings

### 1.  Fraudulent Inducement

The FAC plausibly alleges that Defendants induced Torrence to sign the TOS Agreement in order to gain the benefits under that contract, including a license to all of Plaintiff's shared content and a California forum for related disputes.  "The elements of a claim for fraudulent inducement are a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."  *U.S. Life Ins. Co. in City of N.Y. v. Horowitz*, 146 N.Y.S.3d 23, 24 (1st Dep't 2021) (internal quotation marks omitted).[1]  A claim for fraud or fraudulent inducement is subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b).  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402-03 (2d Cir. 2015); *Coppelson v. Serhant*, No. 19 Civ. 8481, 2021 WL 2650393, at *2 (S.D.N.Y. June 28, 2021).  "Under Rule 9(b), a plaintiff must '(1) detail the statements (or omissions); (2) identify the speaker; (3) state where and when the statements (or omissions) were made; and (4) explain why the statements (or omissions) are fraudulent.'"  *Coppelson*, 2021 WL 2650393, at *2 (quoting *Eternity Glob. Master Fund Ltd. v.*

---

[1] The parties apply New York law in their moving papers.  Accordingly, this decision is based on New York Law.  *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009); *accord PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017).

*Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).  The allegations must "give rise to a strong inference of fraudulent intent," which may be shown by "(1) alleging facts to show that defendant had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490-91 (S.D.N.Y. 2017) (internal quotation marks and alterations omitted).

The FAC alleges that (1) on March 17, 2020, Wu falsely stated in an email that Plaintiff's COVID-specific feed "cannot be ingested by our tech system"; (2) Defendants intended Plaintiff to rely on that statement and turn over their news feeds, subject to the TOS Agreement; (3) Plaintiff did so and (4) Plaintiff was harmed by Defendants' use of content from those feeds. Contrary to Defendants' arguments, the FAC also provides specific factual allegations of Defendants' motive and opportunity:  (1) Defendants are technically sophisticated, with experience handling news feeds from online sources; (2) Defendants understood the value of Plaintiff's content as evidenced by their attempts to acquire Plaintiff or license Plaintiff's content; (3) Defendants went on to use all of Plaintiff's content, relying on the license granted in the TOS Agreement when faced with litigation; (4) during prior negotiations, Defendants were able to test news feeds without the need to create a publisher profile, with attendant TOS Agreement click-through and (5) Wu never mentioned the need for a publisher profile to St. John.  The FAC states a claim for fraudulent inducement.

### 2.  Copyright Infringement

The FAC sufficiently pleads the copyright claim.  Defendants' primary argument to the contrary is that Defendants, by reason of the TOS Agreement, had a license to Plaintiff's content. This argument is unpersuasive because, as discussed above, no reasonable party would

understand Torrence to have the authority to bind Plaintiff to the TOS Agreement, including the broad license therein.

Defendants also claim that if Plaintiff did not intend to license all 1,200 of its proprietary news feeds through the technical troubleshooting process and was instead misled by a false statement that Defendants could not ingest Plaintiff's news feed, the FAC would contain some allegations regarding limitation of the news feeds to COVID-19 information.  Putting aside that Defendants' claims on this point are speculative attorney argument (and that if Wu thought the parties were contemplating a license to all 1,200 feeds, he would have also said something via email), Defendants ignore that the FAC makes such allegations, noting at length various elements of the parties' emails suggesting that the sharing at issue was limited to COVID-19 content.

### 3.  DMCA Violation

The DMCA claim is sufficiently pleaded.  The DMCA prohibits a party from "intentionally remov[ing] or alter[ing] any copyright management information ["CMI"] . . . knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of" a copyright.  17 U.S.C. § 1202(b).  To plead a violation of § 1202(b), a plaintiff must plead "(1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant distributed works or copies of works; (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement."  *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (internal quotation and alteration marks omitted).

The FAC alleges that various of Plaintiff's articles and photographs had CMI consisting of authorship and photo credits, that Defendants have distributed infringing excerpts from Plaintiff's stories, including photographs, that Defendants "intentionally remov[ed] copyright management information," specifically credit for article authorship and photographs, from Plaintiff's works, "knowing or having reasonable grounds to know that such actions would conceal its infringement."  Authorship and photograph credits are types of copyright management information.  *See id.* at 171.  The FAC states a claim for a violation of § 1202(b).

In response, Defendants argue that, as a matter of law, they could not have known or had reasonable grounds to know that any distribution of Plaintiff's copyrighted works would conceal an infringement, as they believed they had a license to a large body of Plaintiff's content through the TOS Agreement signed by Torrence.  This argument is unpersuasive because, for the reasons set forth above, Torrence lacked authority to bind Plaintiff to the TOS Agreement, and as Defendants were acting with allegedly fraudulent intent, they lacked a reasonable basis to think otherwise.

### 4.  RICO and RICO Conspiracy

The RICO causes of action are sufficiently pleaded, and contrary to Defendants' arguments, allege facts that plausibly show that Defendants committed predicate acts of criminal copyright infringement, participated in a RICO enterprise, and thereby caused injury to Plaintiff's business or property, all as explained below.

To state a substantive civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege that defendants, through their "associat[ion] with any enterprise[,] conduct[ed] or participat[ed], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  A "pattern of racketeering activity" requires at least two related

predicate acts, *see* 18 U.S.C. § 1961(1), (5), which either (i) extend over a "substantial period of time" but need not be ongoing, i.e., "close-ended continuity," *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 230, 242 (1989), or (ii) pose a "threat of continuing criminal activity beyond the period during which the predicate acts were performed," i.e., "open-ended continuity," *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008); *accord Grace Int'l Assembly of God v. Festa*, No. 19 Civ. 1101, 2019 WL 7293871, at *2 (2d Cir. Dec. 30, 2019) (summary order) (applying *H.J. Inc.*); *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 268 (S.D.N.Y. 2019) (applying *Spool*).  An "enterprise" means, in relevant part, "any individual . . . or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

"To state a claim for RICO conspiracy under § 1962(d), the plaintiff must also 'allege the existence of an agreement to violate RICO's substantive provisions.'"  *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (quoting *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018)).

### a.  Predicate Act

The FAC alleges that "Zheng and Wu, through News Break, have engaged in 'racketeering activity' . . . by willfully infringing Patch's copyrights for commercial advantage or private financial gain."  Criminal copyright infringement can constitute a predicate act for purposes of RICO.  *See* 18 U.S.C. §§ 1961(1), 2319; 17 U.S.C. § 506(a).  As relevant here, criminal copyright infringement requires "willfully infring[ing] a copyright . . . for purposes of commercial advantage or private financial gain."  17 U.S.C. § 506(a)(1)(A).  The Complaint alleges that Defendants obtain their content by copying Plaintiff's and other publishers' original news articles and photographs for profit.  Defendants claim that the FAC does not plausibly allege willfulness by Zheng and Wu because they reasonably believed that they held a license to

Plaintiff's content.  This license argument is unpersuasive for the reasons given earlier in this Opinion and Order.

To the extent that Defendants suggest an additional, judicially implied requirement that the criminal predicate act be egregious, that is not the law.  Defendants do not cite any case binding on this Court that imposes such a requirement, and the Court has found no such decision. The district court decision Defendants cite (which in any event is not binding precedent) stands only for the unremarkable proposition that "breach of contract [and common business torts] . . . cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal."  *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205, 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013).

### b.  Participation in the RICO Enterprise

Defendants claim that the FAC does not adequately detail Zheng and Wu's participation in the alleged RICO enterprise.  This argument is unpersuasive.  As relevant here, § 1962(c) makes it unlawful "for any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  A plaintiff claiming a RICO violation must allege that the defendant did more than merely participate in a racketeering act and instead must allege that he participated in the "'operation or management of an enterprise through a pattern of racketeering activity.'" *D'Addario v. D'Addario*, 901 F.3d 80, 103 (2d Cir. 2018) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993)); *accord Red Fort Cap., Inc v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 467 (S.D.N.Y. 2019).

The FAC alleges that "Zheng and Wu have managed and controlled the News Break Enterprise by reason of their management positions and Zheng's role as the founder of News

Break.  Both Zheng and Wu actively participated in the sham buyout negotiations that lured Patch into disclosing trade secrets to News Break.  Wu was also engaged in negotiations regarding Patch's agreement to share its coronavirus content with News Break as a public service and used those negotiations to secure a general Patch feed which . . . facilitated News Break's misappropriation of Patch's content . . . ."  These allegations suffice to plead operation of the enterprise through a pattern of racketeering activity.

### c.  Injury to Business or Property

Defendants also argue that the FAC does not allege that Defendants' misappropriation proximately caused any specific injury to Plaintiff's business.  This argument is inaccurate because the FAC alleges that News Break's creation of an intermediate News Break web page containing Plaintiff's content diverted readers from Plaintiff's web page, and that News Break's allowing Google to "crawl and index" original Patch content from News Break's page results in diverting Google traffic from Plaintiff to News Break.

### 5.  Breach of Contract

The FAC adequately pleads a breach of the NDA.  "The essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."  *Maspeth Fed. Sav. & Loan Ass'n v. Yeshiva Kollel Tifereth Elizer*, No. 2019 Civ. 10478, 2021 WL 4301704, at *1 (2d Dep't Sept. 22, 2021).

The FAC alleges that Plaintiff performed its obligations under the contract, and that it provided specific, valuable and proprietary information to Defendants:  Plaintiff's (1) processes for sourcing, organizing and distributing local news content and optimizing that content for visibility in search engine results; (2) features by which users could generate content and (3)

specific features that drive user engagement.  The FAC also claims that this misappropriation assisted Defendants by permitting them to identify more effectively items of Plaintiff's content that could be scraped from Plaintiff's pages, along with various harms flowing from such misappropriation, including lost advertising revenue and page views, as well as lost position in search engine rankings.  The FAC adequately pleads breach of the NDA.

### C.  Personal Jurisdiction Over Zheng

#### 1.  Non-RICO Counts

The FAC lacks any specific allegations about Zheng or his activities *in New York* that would confer general or specific personal jurisdiction over him under the Constitution and New York's long-arm statute, CPLR § 302.  Instead, the FAC alleges that "[a]s News Break's founder and CEO, Zheng has control over all material business decisions, which include the wrongful conduct alleged herein," that he knowingly chose not to stop News Break's infringement despite having the ability to do so and actively profited from News Break's infringement.  Plaintiff claims in its opposition that, as News Break's CEO, he controlled and directed the alleged infringement, and thus that all of News Break's complained-of activity should be imputed to him for jurisdictional purposes under a theory of agency.

"[U]nder New York law, if a corporation has sufficient in-state contacts to fall subject to personal jurisdiction, then a corporate officer who has played a part in the corporate activities that gave rise to the action is likewise subject to jurisdiction, to the extent that due process permits, due to the agency relationship between the corporation and the officer."  *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019) (internal quotation marks and alterations omitted) (citing *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988)). "[A] general allegation that an officer controls a corporation is not sufficient to establish personal

jurisdiction on an agency theory," but if the "complaint as a whole paints [the officer] as intimately involved in [the company's] day-to-day operations," then "it is at least plausible to infer that [the officer] exercised some control over [the company] in establishing [its] New York connections." *Id.* (internal quotation marks, citations and alterations omitted); *see also Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 198 (E.D.N.Y. 2018) (collecting cases) (dismissing for lack of personal jurisdiction where the complaint rested its theory of agency on the officer's title and position within the company).   Because the FAC merely states that Zheng controlled News Break and participated in a single meeting with Plaintiff on August 14, 2019, the FAC does not allege facts showing that Zheng was heavily involved in News Break's day-to-day operations, including control of News Break's allegedly wrongful acts that confer personal jurisdiction in New York.

In response, Plaintiff notes cases finding that corporate officers may be vicariously liable for copyright infringement where the complaint makes allegations that "expressly concern the means by which [a corporate officer] personally participated in [acts of infringement]." *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 729 (S.D.N.Y. 2021).   That observation does not describe the FAC, nor does the law of vicarious liability inform the issue of personal jurisdiction -- whether a corporate officer may be haled into a forum to answer allegations of liability.

## 2.   RICO Jurisdiction

The FAC alleges personal jurisdiction under the RICO counts pursuant to 18 U.S.C. § 1965, which permits a RICO action to be "instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."   "In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established." *Williams v. Equitable Acceptance*

*Corp.*, No. 18 Civ. 7537, 2021 WL 135625, at *8 (S.D.N.Y. Jan. 14, 2021) (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71-72 (2d Cir. 1998)).  Courts "turn to New York's long-arm statute to determine whether [defendant] had minimum contacts with the state sufficient to exercise personal jurisdiction."  *Id.*  As described above, the FAC does not sufficiently allege such contacts for Zheng.

### D.  Leave to Amend

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a).  "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."  *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Olson v. Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020).  Leave to amend also may be denied where the plaintiff "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).  The claims against Zheng are dismissed. Plaintiff may seek leave to replead by November 24, 2021.  Should Plaintiff seek leave to replead, it shall file a letter motion not to exceed two pages explaining how a Second Amended Complaint ("SAC") could make non-conclusory allegations as to Zheng's conduct sufficient to confer jurisdiction under CPLR § 302 and 18 U.S.C. § 1965.  Plaintiff shall append to the letter motion a draft of the proposed SAC marked to show changes from the FAC. Within seven days of the filing of any such letter motion, Defendants shall file a letter response not to exceed two pages.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motion to transfer is denied. Defendant Zheng is dismissed for lack of personal jurisdiction, and Defendants' motion to dismiss is otherwise denied.  Plaintiff may seek to replead as stated in this Opinion and Order.  The Clerk of Court is respectfully directed to close the motion at Docket Number 40.

Dated: November 3, 2021
            New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE