# JUDD BURSTEIN, P.C.
## ATTORNEYS AT LAW

JUDD BURSTEIN*
JBURSTEIN@BURLAW.COM

PETER B. SCHALK**
PSCHALK@BURLAW.COM

———

EMILY C. FINESTONE***
EFINESTONE@BURLAW.COM

*ALSO ADMITTED IN CONNECTICUT
**ALSO ADMITTED IN NEW JERSEY
***ALSO ADMITTED IN MASSACHUSETTS,
   PENNSYLVANIA, AND VIRGINIA

260 MADISON AVENUE
15TH FLOOR
NEW YORK, NEW YORK 10016
TEL: (212) 974-2400
FAX: (212) 974-2944
WWW.BURLAW.COM

12 OLD HILL FARMS ROAD
WESTPORT, CONNECTICUT 06880

March 21, 2022

**VIA ECF**
Honorable Lorna G. Schofield
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *Planck LLC v. Particle Media, Inc.*, 20-CV-10959 (LGS)

Dear Judge Schofield:

    We represent Plaintiff Planck LLC, d/b/a, Patch Media ("Patch" or "Plaintiff"), and I write in response to the March 14, 2022 pre-motion letter ("Pre-Motion Letter") of Defendant Particle Media, Inc., d/b/a, News Break ("News Break") and Vincent Wu ("Wu") (collectively "Defendants"), seeking a pre-motion conference in connection with their anticipated motion to compel production of certain documents concerning (a) Defendants' contemplated express and implied license defenses, and (b) Patch's agreements with other news aggregators and advertisers. Except for one area addressed below, the issues raised in the Pre-Motion letter are entirely moot.

    In this action, Patch is asserting claims against (a) News Break for copyright and DMCA violations, breach of contract, and fraudulent inducement, and (b) Wu for violations of the RICO Statute. We presume Your Honor's general familiarity with the case, but there is one procedural matter that bears on the issues addressed herein. Specifically, in ruling on Defendants' motion to transfer or alternatively dismiss this action, the Court held that "no reasonable party could have believed that [Marc] Torrence had the authority to bind Plaintiff to the TOS Agreement, including its forum selection clause." *Planck LLC v. Particle Media, Inc.*, No. 20-cv-10959, 2021 U.S. Dist. LEXIS 214604, at *10-11 (S.D.N.Y. Nov. 3, 2021) (Schofield, D.J.). Based on this ruling, Plaintiff **initially** objected to producing some of the documents sought by Defendants, because whatever minimal relevance they may have had was completely disproportionate to the burden of producing them. Nevertheless, in an effort to avoid wasting judicial and client resources on an unnecessary discovery dispute, we agreed to withdraw the relevant objections. However, Defendants' counsel filed their Pre-Motion letter prematurely, without giving us the chance to so advise them.

Page 2

In this regard, as part of Plaintiff's meet and confer obligations, on Friday, March 11, 2022, I emailed Defendants' attorneys in relevant part that "we have considered the outstanding issues regarding Patch's responses to Defendants' document requests and may withdraw certain objections. We are working with the client on these issues and will provide an update as to those requests next week." The following Monday, March 14, 2022, at 2:49 P.M. EST, one of Defendants' attorneys responded in relevant part that "[w]e need direct, responsive answers by this Wednesday, March 16, or we will consider Patch to be standing on its objections and will move accordingly." At 6:00 P.M. EST the same day, another of Defendants' attorneys wrote me asking for "an update regarding when Patch will continue document production by March 16...." Without waiting for a response, Defendants then proceeded to file the Pre-Motion Letter one hour and twenty-three minutes later, at 7:23 P.M. EST. Accordingly, by filing the Pre-Motion Letter two days before their proposed date of March 16, 2022, Defendants' counsel have raised a host of issues that are not in dispute.

1. <u>Documents Concerning The Implied License Defense</u>

In addition to filing their letter prematurely, Defendants erroneously claim that Plaintiff refused to produce documents that Plaintiff **never** refused to produce. To explain, Defendants wrote the Court that "Patch has refused to produce 'Documents relating to Patch and/or Marc Torrence's creation of a publisher profile and agreement to the News Break Terms of Service.'" (*See* Dkt. No. 74, at p. 2 (*citing* Plaintiff's Response No. 31)). To the contrary, Plaintiff specifically agreed to produce documents responsive to Request No. 31: "Subject to all objections, Plaintiff **will** produce non-privileged responsive documents in its possession, custody, or control." (Emphasis supplied). Moreover, while Defendants contend that Plaintiff also refused to produce documents concerning "Marc Torrence's authority or job responsibilities at Patch," our firm wrote Defendants' counsel back on March 8, 2022, that we conducted a search and that there simply are no responsive documents to produce, not that we were refusing to produce documents: "we have confirmed that ... there are no documents identifying the specific job responsibilities and authority of a senior product manager." Additionally, Plaintiff is producing all communications between Warren St. John and Marc Torrence. In short, Plaintiff is not withholding any of the documents concerning Marc Torrence and the implied license defense that Defendants have raised with the Court.

2. <u>Documents Concerning Patch's Agreements with News Aggregators and Advertisers</u>

In terms of Patch's contracts with News Aggregators, Plaintiff withdrew its objections to producing them. There are three News Aggregator agreements. We produced two of them earlier today. As for the third one, it contains a confidentiality provision that prevents production absent a Court Order following notice and an opportunity to seek a protective order. We provided notice of Plaintiff's intention to produce the contract. If the third-party does not seek a protective order imminently, we propose that the parties submit a stipulation and proposed Order authorizing its production so that Plaintiff does not breach the contract by producing it.

Regarding the advertising agreements, we initially thought that there were 3,000 relevant agreements that the client would have to gather manually, which was one of the grounds for

Page 3

objecting as to burdensomeness. We later determined that there were approximately 1,900 such contracts, and Plaintiff identified a more efficient method for collecting their local advertising agreements (there are national, regional, and local advertising agreements). However, Plaintiff could not bulk collect the regional/national advertising contracts, and had to manually pull those 258 agreements. Once the agreements were collected, we learned that the vast majority of them contain confidentiality provisions. The confidentiality provisions are not uniform, and required extensive attorney-hours for individual review. Nonetheless, Plaintiff still agreed to withdraw its objection as to burdensomeness.

Upon review by counsel, we determined that producing 229 of the advertiser agreements would not breach their confidentiality provisions in light of the Confidentiality Stipulation and Order that was entered in this case. Accordingly, we produced those 229 contracts earlier today. Certain other advertising agreements require notice and consent prior to disclosure to a third-party, and we are in the process of seeking to procure those consents. The last category is the most problematic. Specifically, all 1,636 local advertising contracts contain the following provision: "Each party shall not disclose the terms or conditions of the Advertising Agreement or of any Purchase Order to any third party, except to its professional advisors under a strict duty of confidentiality or as necessary to comply with a governmental law, rule, or regulation." Moreover, there is no clause that authorizes production upon consent, or a provision that allows for production when a confidentiality order is in place. Therefore, we are concerned that producing those agreements could arguably put our client in breach of 1,636 contracts. We have no other objection to producing them in discovery.

In terms of relevance, Defendants argue that if Patch shares its entire RSS feed with third parties that would be relevant to its implied license defense. These are contracts with third-parties who pay to have their products and services advertised on Patch websites. It has nothing to do with providing RSS feeds to a News Aggregator like Yahoo! In all events, the 229 contracts that were already produced would be sufficient for Defendants to make such an argument if there were any basis for it. News Break also claims that it needs the Advertiser Agreements to address Plaintiff's allegations that its advertising revenue dropped as a result of News Break's actionable conduct. The advertising contracts cannot answer that question accurately, because many contain payment provisions that are for maximum amounts that are reached based on performance. Moreover, there are far less burdensome ways to obtain this information, *e.g.*, by profit and loss reports relied upon by executives at Patch that show advertising revenue, which we are producing. In sum, Plaintiff should not have to risk breaching 1,600+ contracts to provide information that is easily obtainable through other means, and not relevant to any claim or defense.

Lastly, Defendants complain that Plaintiff's rolling production is going slowly. We have been working with our client and a vendor to identify and pull a massive number of documents and communications, review them, and prepare for their production. In addition to the 299 contracts referenced above, we also produced 355 emails today. We are working diligently and intend to meet our deadline.

                                                              Respectfully submitted,
                                                              /s/ Peter B. Schalk
                                                              Peter B. Schalk

cc:      Defendants' counsel (via ECF)